# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

IN RE:                                          )
                                                )   Chapter 13
TAMARA SUE CREWS,                               )   Case Number 12-31264-KLP
                                                )   Case Number 14-35243-KLP
     Debtor.                                  )
                                                )
JUDY A. ROBBINS,                                )
United States Trustee For Region Four,          )
                                                )
     Movant,                                  )
                                                )
*v.*                                            )
                                                )
TAMARA SUE CREWS                                )
    and                                      )
NNIKA E. WHITE                                  )
    and                                      )
THE LAW OFFICE OF WHITE &                       )
ASSOCIATES, PLLC                                )
                                                )
     Respondents.                             )

## NOTICE OF UNITED STATES TRUSTEE'S MOTION TO EXAMINE TRANSACTIONS WITH DEBTOR'S ATTORNEY AND FOR IMPOSITION OF SANCTIONS AND HEARING THEREON

     PLEASE TAKE NOTICE that the United States Trustee has filed with the Court a **Motion To Examine Transactions With Debtor's Attorney And For Imposition of Sanctions** (the "Motion") in the above-captioned case.  A copy of the Motion is being served on you simultaneously herewith.

     <u>**Your rights may be affected.**</u>  **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

Robert B. Van Arsdale, Esq., AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

If you do not want the Court to grant the relief sought in the Motion or if you want the Court to consider your views on the Motion, then on or before **seven (7) days** before the scheduled hearing date on the Motion, you or your attorney must:

( X )    File with the Court, at the address below, a written response with supporting memorandum pursuant to Local Bankruptcy Rule 9013-1(H).  You must mail or otherwise file it early enough so the Court will **receive** it on or before the date stated above.

Clerk of Court
United States Bankruptcy Court
701 East Broad Street, Suite 4000
Richmond, Virginia 23219

You must also serve a copy on:

Robert B. Van Arsdale, AUST
Shannon Pecoraro, Esq.
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

( X )    Attend a hearing on the Motion which has been scheduled for **October 20, 2015 at 10:00 a.m.** before the Honorable Keith L. Phillips at the United States Bankruptcy Court, 701 East Broad Street, Suite 5100, Richmond, VA 23219.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that requested relief without further notice or hearing.

Date:  August 14, 2015                              JUDY A. ROBBINS
                                                    United States Trustee
                                                    Region Four

                                                    /s/ Robert B. Van Arsdale
                                                    Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
                                                    Shannon Pecoraro, Esq. (Va. Bar No. 46864)
                                                    Office of the United States Trustee
                                                    701 East Broad Street, Suite 4304
                                                    Richmond, VA 23219

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned do hereby certify that on August 14, 2015, I caused to be mailed a true and correct copy of the above and foregoing, with postage fully prepaid herein, via U.S. Mail, to the following parties:

Tamara Sue Crews
11955 Mountain Laurel Drive
Richmond, VA 23236

The Court has electronically mailed the document to the following persons or all other necessary parties, including, the Debtor's attorney and the Chapter 13 Trustee via the CM/ECF system.

<u>/s/ Robert B. Van Arsdale</u>
Robert B. Van Arsdale, Esq., AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (704) 771-2330

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 13 |
| TAMARA SUE CREWS, | ) | Case Number 12-31264-KLP |
| | ) | Case Number 14-35243-KLP |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| JUDY A. ROBBINS, | ) | |
| United States Trustee For Region Four, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| TAMARA SUE CREWS | ) | |
| and | ) | |
| NNIKA E. WHITE | ) | |
| and | ) | |
| THE LAW OFFICE OF WHITE & | ) | |
| ASSOCIATES, PLLC | ) | |
| | ) | |
| _____Respondents._____ | ) | |

**UNITED STATES TRUSTEE'S MOTION
FOR REVIEW OF TRANSACTIONS WITH DEBTOR'S ATTORNEY
AND FOR THE IMPOSITION OF SANCTIONS**

Judy A. Robbins, the United States Trustee for Region Four (the "U.S. Trustee") hereby

moves this Court, pursuant to §§105 and 329 of Title 11 of the United States Code, 11 U.S.C. §§

101, et seq. (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 2017 (the

"Bankruptcy Rules" and each a "Bankruptcy Rule"), to examine the Debtor's transactions with

Robert B. Van Arsdale, Esq., AAUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Telephone (804) 771-2310
Facsimile (804) 771-2330

and fees paid to the above-captioned debtor's attorney, Nnika E. White, and The Law Office of

White & Associates, PLLC, and for entry of an Order (a) directing the disgorgement of fees, (b)

imposing sanctions and penalties as the Court deems appropriate, and (c) suspending Nnika E.

White for a reasonable time from practicing before the United States Bankruptcy Court for the

Eastern District of Virginia.  In support of this motion, the U.S. Trustee states the following:

### Parties

1.       Judy A. Robbins is the United States Trustee for Region Four.

2.       Tamara Sue Crews (the "Debtor") is a debtor in Bankruptcy Case Number 14-

35243-KLP (the "2014 Case"), a Chapter 13 case pending with this Court.  The Debtor also filed

a previous Chapter 13 case, Bankruptcy Case Number 12-31264-KLP (the "2012 Case").  The

2012 Case and the 2014 Case shall be referred to collectively hereafter as the "Bankruptcy

Cases."

3.       Carl M. Bates (the "Chapter 13 Trustee") serves as Chapter 13 Trustee in the

2014 Case.

4.       Suzanne E. Wade served as chapter 13 trustee in the 2012 Case upon the

retirement of Robert E. Hyman in December 2014.

5.       Nnika E. White ("Ms. White") is an attorney licensed in the Commonwealth of

Virginia and currently represents the Debtor in the 2014 Case and also represented the Debtor in

the 2012 Case.

6.       Ms. White is the owner and operator of The Law Office of White & Associates,

PLLC, located in Richmond, Virginia (the "Law Firm").

7.       Ms. White routinely files bankruptcy cases on behalf of individuals and appears

before this Court.

8.      Ms. White is also a debtor in bankruptcy case 14-36232-KRH, which case was filed as a joint Chapter 13 case with Ms. White's husband.[1]

## Jurisdiction and Venue

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and1334 and Bankruptcy Code §§ 105 and 329 and Bankruptcy Rule 2017.

10.      This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A) and (J).

11.      Venue is proper before the Court pursuant to 11 U.S.C. §§ 1408 and 1409.

## Preliminary Statement

12.      On June 17, 2015, the Third District Subcommittee (the "VSB Subcommittee") issued a Certification to the Virginia State Bar Disciplinary Board against Ms. White (the "VSB Certification").   A copy of the VSB Certification is attached hereto as Exhibit A.

13.      In the VSB Certification, among other allegations of misconduct, the Subcommittee alleges that Ms. White violated various Rules of Professional Conduct in her representation of the Debtor in the Bankruptcy Cases.[2]

14.      Hearing on the VSB Certification is scheduled for November 20, 2015.

15.      The allegations in the VSB Certification give rise to this Motion.

---

[1] Though Ms. White is in a personal bankruptcy case, the U.S. Trustee would assert that she is not barred by the automatic stay pursuant to Bankruptcy Code § 362(b)(4), which provides that "the filing of a petition under section 301, 302, or 202 of this title, . . . does not operate as a stay. . .[u]nder paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

[2] Specifically, with regard to the representation of the Debtor, the Subcommittee alleges that Ms. White has violated the following provisions of Professional Conduct:  a) Rule 1.1 (Competence), b) Rule 1.7 (Conflict of Interest), c) Rule 1.15 (Safekeeping Property), d) Rule 3.3 (Candor Toward the Tribunal), e) Rule 4.1 (Truthfulness In Statements To Others), and f) Rule 8.4 (Misconduct).

## **Background – 2012 Case**

16.     On February 29, 2012, the Debtor, with the assistance of Ms. White, filed the

2012 Case under Chapter 13 of the United States Bankruptcy Code.

17.     Simultaneous with the filing of the petition, the Debtor, with the assistance of Ms.

White, filed the schedules, statement of financial affairs, and Chapter 13 plan.

18.     On October 16, 2012, the Debtor, with the assistance of Ms. White, filed amended

schedules.

19.     The Debtor indicates on Schedule I that she is disabled and that her sources of

income are social security and disability.

20.     Upon review of the original schedules and amended schedules filed in the 2012

Case, it appears neither Ms. White nor the Law Firm is listed as a creditor of the Debtor.

21.     On August 6, 2014, Robert E. Hyman, the Chapter 13 Trustee in the 2012 Case,

filed a Motion to Dismiss Case For Failure To Make Plan Payments Pursuant To 11 U.S.C

1307(c)(4) and 1307(c)(6) (the "Motion To Dismiss").[3]

22.     On September 17, 2014, a hearing was held on the Motion To Dismiss.

23.     Per the Court's docket notes, the Motion To Dismiss was uncontested by the

Debtor.

24.     On September 18, 2014, an Order was entered dismissing the 2012 Case.

25.     The Disclosure of Compensation filed in the 2012 Case indicates that Ms. White

received $269.00 in legal fees up front in the case.

26.     The Final Report filed in the 2012 Case indicates that Ms. White received an

additional sum of $3,359.00 through the Debtor's Chapter 13 plan.

---

[3] Robert E. Hyman retired on December 31, 2014; and Suzanne E. Wade took over as Chapter 13 Trustee in the 2012

**Background – 2014 Case**

27.     On September 29, 2014, the Debtor, with the assistance of Ms. White, filed the 2014 Case as a skeletal filing under Chapter 13 of the Bankruptcy Code.

28.     Though Ms. White also represented the Debtor in the 2012 Case, the petition filed in the 2014 Case fails to list the 2012 Case as a prior bankruptcy case filed within the last eight (8) years.

29.     On October 7, 2014, the Debtor, with the assistance of Ms. White, filed a Motion to Extend Automatic Stay Pursuant to 11 U.S.C. § 362(c)(3)(B) (the "Motion To Extend Stay"). On October 29, 2014, this Court entered an Order granting the Motion To Extend Stay.

30.     On October 21, 2014, the Debtor, with the assistance of Ms. White, filed an Affidavit in support of the Motion To Extend Stay.

31.     In the Affidavit, the Debtor asserts that she filed the 2012 Case in good faith, but fell behind in the plan payments when her mother passed away without life insurance or a burial policy; and she was forced to pay for her mother's funeral on her own.  She further asserts that she could not "afford to make her plan payments while paying for her mother's funeral."

32.     Also on October 21, 2014, the Debtor, with the assistance of Ms. White, filed her schedules, statement of financial affairs and chapter 13 plan.

33.     The Debtor indicates on Schedule I that she is disabled and that her sources of income are social security and disability.

34.     The Disclosure of Compensation filed in the 2014 Case indicates that Ms. White received $369.00 in legal fees up front in this case.

35.     Ms. White seeks payment of $4,631.00 through the chapter 13 plan in the 2014

Case.

Case.

36.     Upon review of the Chapter 13 Trustee's website as of the date of this Motion, it appears Ms. White has received legal fees through the Debtor's chapter 13 plan of $2,850.00.

37.     On July 31, 2015, based on the allegations in the VSB Certification, the Chapter 13 Trustee filed a Motion By Trustee To Convert Case From Chapter 13 To Chapter 7 (the "Motion To Convert"), which matter is scheduled for hearing on September 2, 2015.

38.     In the Motion To Convert, the Chapter 13 Trustee asserts that "it appears that the debtor paid her attorney, Nnika E. White, $33,490.00 approximately two weeks prior to filing the instant case . . . for outstanding legal fees for services unrelated to the bankruptcy case and dating back to 2005.  This payment was not disclosed in the debtor's Statement of Financial Affairs and your Trustee did not become aware of the payment until after confirmation of the plan."

39.     The Trustee further asserts in his Motion To Convert that the payment is a preference avoidable under § 547 of the Bankruptcy Code, and that, therefore, conversion to Chapter 7 is appropriate and in the best interests of creditors.

## The VSB Certification

40.     As stated previously, on June 17, 2015, the VSB Subcommittee filed the VSB Certification.

41.     In the VSB Certification, the VSB Subcommittee asserts various allegations of misconduct by Ms. White, including misconduct in connection with the Bankruptcy Cases filed by Ms. White on behalf of the Debtor.

42.     According to the VSB Certification, Ms. White represented the Debtor in various matters since 2005; and, at the time of the 2012 Bankruptcy, was a general creditor of the

Debtor.

43.    Upon review of the original schedules and amended schedules filed in the 2012 Case, it appears Ms. White failed to disclose that she was a general creditor of the Debtor.

44.    According to the VSB Certification, as early as July 15, 2014, prior to the dismissal of the 2012 Case, Ms. White and the Debtor had discussions about payments the Debtor would receive from a stock disbursement.

45.    According to the VSB Certification, on or about September 10, 2014, the Debtor received two (2) checks payable to her totaling $50,074.58 from TIAA-CREF, which represent inheritance from a cousin (the "Inheritance").

46.    According to the VSB Certification, on or about September 16, 2014 (after the Motion To Dismiss the 2012 Case is filed by the Chapter 13 Trustee, but prior to the hearing on the Motion To Dismiss or entry of an Order dismissing the 2012 Case), Ms. White deposited into her Law Firm's trust account, the sum of $50,074.58 from TIAA-CREF, which, upon information and belief, represents the Debtor's Inheritance.[4]

47.    According to the VSB Certification, immediately thereafter, Ms. White disbursed to herself or her Law Firm the sum of $33,490.00 as payment for outstanding legal fees for prior legal work dating back to 2005.

48.    According to the VSB Certification, in addition to the $33,490.00 payment, Ms. White also deducted from the Inheritance, the sum of $679.00 for a bankruptcy filing fee and $1,875.00 for "future bankruptcy payments," leaving remaining funds of $14,030.58 in the possession of Ms. White.

---

[4] The U.S. Trustee has also reviewed the Law Firm's trust account in connection with the U.S. Trustee's investigation of Ms. White's personal bankruptcy case, Bankruptcy Case Number 14-36232-KRH. The U.S. Trustee has observed a deposit into the trust account in the amount of $50,074.58 dated September 16, 2014.

49.      On September 18, 2014, two (2) days after the deposit of the Inheritance into Ms. White's Trust account, this Court enters an Order dismissing the Debtor's 2012 Case.

50.      On September 29, 2014, less than two (2) weeks after Ms. White deposited the Inheritance into her Trust account and disbursed to herself or her Law Firm the sum of $33,490.00, the Debtor, with the assistance of Ms. White, filed the 2014 Case.

51.      Upon review of the schedules and statement of financial affairs filed in the 2014 Case, there is no disclosure by the Debtor of the $33,490.00 payment to Ms. White or her Law Firm.

52.      According to the VSB Certification, after the 2014 Case was filed, Ms. White distributed numerous sums of money from the Law Firm's operating account to the Debtor, which transactions are further detailed in the VSB Certification.

53.      Upon information and belief, Ms. White has not disclosed to this Court that she was holding funds belonging to the Debtor as of the filing date of the 2014 Case or that she has been issuing money to the Debtor while the 2014 Case is pending.

## **Argument**

54.      "Attorneys are responsible for maintaining the integrity of the judicial process." *In re Alvarado*, 363 B.R. 484, 490 (Bankr. E.D.Va. 2007).

55.      Ms. White, through her actions in these Bankruptcy Cases, has violated numerous provisions of the Virginia Rules of Professional Conduct.

56.      Specifically, Ms. White has violated:  a) Rule 1.1 (Competence), b) Rule 1.7 (Conflict of Interest), c) Rule 3.3 (Candor Toward the Tribunal), d) Rule 4.1 (Truthfulness In Statements To Others), and e) Rule 8.4 (Misconduct).

57.      The relevant provisions of the Virginia Rules of Professional Conduct provide as

follows:

    a. Attorneys must provide competent representation to a client, which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Rule 1.1 of the Virginia Rules of Professional Conduct.*

    b. Subject to very specific exceptions, a lawyer is precluded from representing a client if the representation involves a "concurrent conflict of interest", which exists if "there is significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." *Rule 1.7 of the Virginia Rules of Professional Conduct.* Comment 10 to Rule 1.7 of the Virginia Rules of Professional Conduct further states that "a lawyer may not allow business or personal interests to affect representation of a client."

    c. "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal; (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, subject to Rule 1.6. . ." *Rule 3.3 of the Virginia Rules of Professional Conduct.*

    d. "In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of fact or law; or (b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." *Rule 4.1 of the Virginia Rules of Professional Conduct.*

    e. "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct . . . (b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law; (c) engage in conduct involving dishonesty, fraud, deceit or

misrepresentation which reflects adversely on the lawyer's fitness to practice law.

. ." *Rule 8.4 of the Virginia Rules of Professional Conduct.*

58.     As Judge Huennekens has stated, "[t]he critical function lawyers serve in society comes with grave responsibility.  Lawyers are expected to adhere to recognized standards of professional conduct." *See In re Vaughan*, 2014 Bankr. LEXIS 168, at *3 (Bankr. E.D. Va. January 15, 2014) (*citing In re Johnson*, 2008 Bankr. LEXIS 164, at *12 (Bankr. E.D. Va. January 18, 2008).

59.     Ms. White has failed to adhere to the recognized standards of professional conduct in these Bankruptcy Cases.

60.     Ms. White caused the Debtor, in both the 2012 Case and the 2014 case, to file schedules and statements containing various misrepresentations for her own personal gain.

61.     Ms. White, while in the role of a fiduciary, also caused the Debtor to transfer to her or her Law Firm, the sum of $33,490.00 to the detriment of the Debtor and the creditors of the Debtor.

62.     In so doing, Ms. White placed herself in the position of having an interest directly at odds with the Debtor.

63.     Upon information and belief, as early as July 2014 and prior to the dismissal of the 2012 Case, Ms. White became aware of the Inheritance and failed to disclose it to this Court.

64.     Pursuant to the Fourth Circuit ruling in the case of *Carroll v. Logan*, 735 F.3d 147 (4th Cir., 2013), the Debtor was required to disclose and turn over the Inheritance to the chapter 13 trustee.  *See Carroll v. Logan,* 735 F.3d at 150 (stating that "Section 1306 broadens the definition of property of the estate for chapter 13 purposes to include all property acquired and all earnings from services performed by the debtor after the commencement of the case" and

"expand[s] the estate for Chapter 13 purposes by capturing the types, or 'kind,' of property

described in Section 541 (such as bequests, devises, and inheritances), but not the 180-day

temporal restriction").

65.     Not only was Ms. White aware of the Inheritance during the pendency of the 2012

Case, but on September 16, 2014, prior to the hearing on the dismissal of the 2012 Case, Ms.

White deposited the Inheritance into her Trust Account and paid herself $33,490.00 and retained

the remainder of the Inheritance in one of her Law Firm's bank accounts.[5]

66.     Not even two (2) weeks later, Ms. White filed the 2014 Case on behalf of the

Debtor and failed to disclose a) the $33,490.00 payment paid to her or her Law Firm (which is

required to be disclosed on the Statement of Financial Affairs)[6] and b) that she was holding

funds belonging to the Debtor of no less than $14,030.58 (which is required to be disclosed on

Schedule B).

67.     Ms. White caused the Debtor to make further misstatements to this Court in the

Motion To Extend Stay and supporting Affidavit filed in the 2014 Case when it is stated that the

Debtor's 2012 Case failed because she could not "afford to make her plan payments while

paying for her mother's funeral."

68.     It is never mentioned in the Motion To Extend Stay or supporting Affidavit that

the Debtor had just received the Inheritance, paid a large payment of $33,490.00 to Ms. White or

her Law Firm, and that Ms. White was holding approximately $14,000.00 belonging to the

Debtor.

---

[5] It is unclear whether the Inheritance funds belonging to the Debtor were held in Ms. White's Trust account or her
Operating account.  According to the VSB Certification, Ms. White issued funds to the Debtor from her operating
account during the pendency of the 2014 Case.

[6] Statement of Financial Affairs Question 3(a) specifically requires the disclosure of payments to creditors within the
90 day period preceding the commencement of a case to the extent such payment exceeds $600.00 in the aggregate.

69.    All of these facts would have been extremely relevant to this Court in determining whether the filing of the 2014 Case within one year of the dismissal of the 2012 Case was in good faith and whether the automatic stay should have been extended.

70.    As a seasoned bankruptcy attorney, Ms. White should be well aware of a) the requirement for mandatory disclosure and turnover of the Inheritance to the chapter 13 trustee in the 2012 Case pursuant to Bankruptcy Code § 1306 and *Carrol v. Logan* , b) the requirement for mandatory disclosure in the 2014 Case of the $33,490.00 payment to her or her Law Firm, which occurred less than two weeks before the filing of the 2014 Case, and c) the relevance of the disclosure of the Inheritance and $33,490.00 payment in the Motion To Extend Stay, which would have likely affected this Court's determination of the Debtor's good faith in the filing of the 2014 Case.

71.    Based on the allegations in the VSB Certification, the Chapter 13 Trustee has filed a Motion To Convert the Debtor's case to Chapter 7.

72.    Ms. White's actions in these Bankruptcy Cases have caused harm to the Debtor and the creditors of the Debtor.

73.    The Debtor, with the assistance and guidance of Ms. White, filed bankruptcy schedules and statements of financial affairs in both Bankruptcy Cases under penalty of perjury that the information provided therein was true and correct.  However, there were numerous, material misrepresentations contained in the schedules and statements of financial affairs, which appear to have been for the benefit of Ms. White.

74.    The Debtor, also with the assistance and guidance of Ms. White, failed to disclose material facts to this Court in her Motion To Extend Stay and supporting Affidavit.  Again, the

non-disclosure appears to have been for the benefit of Ms. White.

75.     Given that Ms. White was aware of the Inheritance and, in fact, personally

benefitted by receiving a large payment from the Inheritance during the pendency of the 2012

Case and less than two (2) weeks prior to the filing of the 2014 Case, it would appear that Ms.

White knowingly assisted the Debtor in the various misrepresentations in the 2012 Case and

2014 Case.

76.     "When a lawyer files a document with a court, such as a federal bankruptcy court,

he or she takes an act of undeniable significance.  It is of course important to, and it has

potentially serious consequences for, his or her clients, who have entrusted their legal and

financial affairs to the skill and integrity of the lawyer.  It also has consequences-legally,

professionally and ethically-to the lawyer."  *In re Daw*, 2011 Bankr. LEXIS 279, at *1; 2011 WL

231362, at *1 (Bankr. D. Idaho Jan. 24, 2011) (citation omitted).

77.     The Court in *Daw* stated that "bankruptcy debtors rely on their attorney to

shepherd them through unfamiliar and complicated territory. . . and may not know that verifying

and signing papers that contain false or inaccurate information exposes them to loss of discharge

and, perhaps, criminal prosecution."  *Id.* At *2 (citations omitted).

78.     Ms. White's actions have placed the Debtor in a precarious and unfortunate

position.

79.     This Court may sanction and impose a civil penalty against Ms. White and order

disgorgement of fees pursuant to Bankruptcy Code §§ 105, 329 and Bankruptcy Rule 2017.

80.     Pursuant to Bankruptcy Code § 105, this Court may also suspend Ms. White's

right to engage in the practice of law before the United States Bankruptcy Court for the Eastern

District of Virginia.

81.    The issue of the Bankruptcy Court's authority to impose sanctions, order

suspension, and to oversee debtor's transactions with their attorneys has been addressed by the

United States District Court for the Eastern District of Virginia in the case of *In re Parker*, 2014

U.S. Dist. LEXIS 136355 (E.D. Va. Sept 26, 2014).

82.    As stated by Judge Payne, "[a] federal court has an inherent power 'to control

admission to its bar and to discipline attorneys who appear before it'. . . [and the] power to

sanction has been recognized in the Fourth Circuit as with the Bankruptcy Court in addition to

Article III courts." *Id*. at *14, *citing McGahren v. First Citizens Bank & Trust Co. (In re Weiss),*

111 F.3d 1159, 1169 (4th Cir. 1997) and *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991).

83.    Judge Payne stated that "Bankruptcy Courts have the power to oversee debtor's

transactions with their attorneys under 11 U.S.C. 329."  *In re Parker*, 2014 U.S. Dist. LEXIS

135355, at *19 (E.D. VA., Sept, 26, 2014).

84.    Judge Payne further stated that "[t]he Bankruptcy Court's sanction power,

allowing it to discipline those attorneys who appear before it, extends to requiring deficiently-

performing attorneys to reimburse those who were negatively affected by their wrongdoing." *Id*.

at *21-22, *citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)

(stating that the inherent sanction power permitted a court to assess attorneys' fees) (superseded

by statute on other grounds); *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178 (9th Cir. 2003)

(upholding **[*22]**  a bankruptcy court's award of the Trustee's legal fees); *Oliveri v. Thompson*,

803 F.2d 1265 (2nd Cir. 1986) (court's exercise of its inherent sanction power creates an

exception to the rule that parties bear their own fees and expenses of litigation); *In re Couch-

Russell*, 2003 Bankr. LEXIS 2260, at 12 (Bankr. D. Idaho 2003) (The inherent sanction power

"includes the ability to assess sanctions in the form of attorneys' fees and costs..."); *In re 72nd St.*

*Realty Association*, 185 B.R. 460, 475 (Bankr. S.D.N.Y. 1995) ("A court is empowered to assess

costs and fees against an attorney and/or his client where a party acts in bad faith, vexatiously,

wantonly, or for oppressive reasons").

85.    The Preamble to the Virginia Rules of Professional Conduct offers guidance

regarding expectations of attorneys and provides, in pertinent part, as follows:

> In all professional functions a lawyer should be competent, prompt
> and diligent. . .
>
> The legal profession is largely self-governing. Although other
> professions also have been granted powers of self-government, the
> legal profession is unique in this respect because of the close
> relationship between the profession and the processes of
> government and law enforcement. . . .
>
> To the extent that lawyers meet the obligations of their
> professional calling, the occasion for government regulation is
> obviated. . . .
>
> The legal profession's relative autonomy carries with it special
> responsibilities of self-government…. Every lawyer is responsible
> for observance of the Rules of Professional Conduct. A lawyer
> should also aid in securing their observance by other lawyers.
> Neglect of these responsibilities compromises the independence of
> the profession and the public interest which it serves.
>
> Lawyers play a vital role in the preservation of society. The
> fulfillment of this role requires an understanding by lawyers of
> their relationship to our legal system. The Rules of Professional
> Conduct, when properly applied, serve to define that relationship.
>
> Virginia Rules of Prof'l Conduct, Preamble.

86.    Bankruptcy Code § 105(a) not only enables the Bankruptcy Court to issue any

order needed to enforce violations of other sections of the Bankruptcy Code, but also serves as a

separate source for sanctions in its own right. *Weiss v. First Citizens Bank & Trust Co.,* 111 F.3d

1159, 1171-1172 (4th Cir. 1997), cert. denied, 522 U.S. 950 (1997).  Bankruptcy courts have the

power to sanction parties or counsel for bad faith conduct in bankruptcy proceedings. *See, e.g., Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir. 2000) (section 105(a) power "includes the power to sanction counsel"); *See generally In re Final Analysis, Inc.,* 389 B.R. 449 (Bankr D. Md. 2008) (bankruptcy court may use section 105(a) to choose the remedy it finds necessary to curb the abusive unauthorized practice of law); *In re Babcock*, 258 B.R. 646, 651 (Bankr. E.D. Va. 2001) (among other things, court imposed $2,653.00 in monetary sanctions against counsel for his negligent administration of debtors' chapter 7 case) (counsel's advice--to disregard the instruction of the trustee--was "truly incredible").

87.     Bankruptcy Code § 329 authorizes the Court to examine the Debtor's transactions with Ms. White.  Bankruptcy Code § 329 provides, as follows:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to – (1) the estate if the property transferred –
> (A) would have been property of the estate; or
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> (2) the entity that made such payment.

11 U.S.C. § 329 (2015).

88.     Bankruptcy Rule 2017 provides authority for this Court to determine whether payment of money or transfer of property of the debtor, either before or after an order for relief, is excessive.

89.     To the extent the payment or transfer occurs after an order for relief, Bankruptcy

Rule 2017 provides authority for this Court to determine whether the payment or transfer is

excessive "whether the payment or transfer is made directly or indirectly, if the payment,

transfer, or agreement therefor is for services <u>in any way</u> related to the case."  Fed. R. Bankr. P.

2017 (emphasis added).

90.    This Court may examine all payments made to Ms. White or her Law Firm, not

just the payments made in connection with the Bankruptcy Cases.

91.    Pursuant to Collier on Bankruptcy,

> Rule 2017 does not limit the purposes for the transfers or agreements which may
> be examined. There is no requirement that the fee arrangement pertain to services
> to be performed in connection with the bankruptcy case. Any fees or agreement
> for fees which otherwise fits the requirements for examination under Rule 2017
> will be subject to review under the rule, even if the services rendered were in
> connection with matters unconnected with the bankruptcy.  While Rule 2017(a)
> governs any transaction with any attorney in contemplation of bankruptcy,
> regardless of the nature or purpose of the representation, Rule 2017(b) requires
> that the services rendered or to be rendered have some (however minimal)
> connection with the bankruptcy case. The court may examine a promise to pay a
> prior account due to counsel under Rule 2017.

9 Collier On Bankruptcy ¶ 2017.08 (Alan N. Resnick, Henry J. Sommer eds., 16th ed.
2009).

92.    Based on the allegations described in the foregoing paragraphs, all fees paid to

Ms. White for her legal services in the 2012 Case and 2014 Case appear excessive and should be

disgorged to the appropriate trustee.

93.    Additionally, the $33.490.00 payment made to Ms. White during the pendency of

the 2012 Case and within ninety (90) days of filing of the 2014 Case should also be disgorged to

the appropriate trustee.

94.    Given the egregious and self-serving nature of the alleged actions of Ms. White,

the U.S. Trustee asserts that sanctions and suspension for a reasonable time from the practice of

law before the United States Bankruptcy Court for the Eastern District of Virginia are warranted.

95.     Judge Huennekens has aptly stated "[a]s officers of the court, attorneys have a special responsibility for upholding the quality of justice within the judicial process . . . The Court depends on the veracity, integrity and competence of the attorneys that practice before it." *In re Alvarado*, 363 B.R. at 489-90 (Bankr. E.D. Va. 2007).

96.     Ms. White's actions in these Bankruptcy Cases have not only violated numerous Rules of Professional Conduct, but have caused harm to her client, the creditors and the integrity of the bankruptcy system.

WHEREFORE, the United States Trustee, by counsel, respectfully moves the Court to review the fees received by Nnika E. White or The Law Office of White & Associates, PLLC and to order complete disgorgement, assess appropriate sanctions and penalties, suspend her right to practice before the United States Bankruptcy Court for the Eastern District of Virginia for a reasonable time, and for such other and further relief as may be just.

Respectfully submitted,

Date:  August 14, 2015

JUDY A. ROBBINS
United States Trustee
Region Four

/s/ Robert B. Van Arsdale
Robert B. Van Arsdale, AUST (Va. Bar No. 17483)
Shannon Pecoraro, Esq. (Va. Bar No. 46864)
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on August 14, 2015, I caused to be mailed a true and correct copy of the above and foregoing, with postage fully prepaid herein, via U.S. Mail, to the following parties:

Tamara Sue Crews
11955 Mountain Laurel Drive
Richmond, VA 23236

In addition, the foregoing was delivered via electronic mail pursuant to II.B.4 of the Administrative Procedures of the CM/ECF System for the United Stated Bankruptcy Court for the Eastern District of Virginia to all other necessary parties.

/s/Robert B. Van Arsdale
Robert B. Van Arsdale, AUST

VIRGINIA:

BEFORE THE THIRD DISTRICT—SECTION I  SUBCOMMITTEE
OF THE VIRGINIA STATE BAR

IN THE MATTER OF
NNIKA EVANGELINE WHITE                    VSB Docket No. 15-031-102065

SUBCOMMITTEE DETERMINATION
(CERTIFICATION)

On June 3, 2015, a meeting in this matter was held before a duly convened Third

District—Section I Subcommittee consisting of Reiss F. Wilks, Esquire, chair presiding, Victoria

N. Pearson, Esquire, and Reverand Daniel Greenwood, lay member.  Pursuant to Part 6, § IV,

¶13-15.B.3 of the Rules of the Supreme Court of Virginia, the Third District—Section I

Subcommittee of the Virginia State Bar hereby serves upon Nnika Evangeline White,

("Respondent") the following Certification:

I.      FINDINGS OF FACT

1.  Respondent was licensed to practice law in the Commonwealth of Virginia in or about
    October 2001.  At all times relevant to this matter, her license has been in good standing.

2.  Respondent is the owner of and practices law at White & Associates, P.C.  Respondent
    started this practice in or about 2004.

3.  Respondent's areas of practice include, but are not limited to bankruptcy, domestic relations,
    criminal law, and small business law.

*Misconduct Related to Respondent's Handling of Client Funds
and Management of the Trust Account*

4.  Since 2004, Respondent has maintained her trust account and operating account at Wells
    Fargo Bank, which was formerly Wachovia Bank.

5.  In or about 2004, Respondent set up her trust account to provide overdraft protection for her
    operating account. Respondent asserts that she was unaware that she could not use her trust
    account for overdraft protection for her operating account until the bar's 2015 inquiry to her
    and that she ceased this practice thereafter.

1

6. Since 2004, Respondent has deposited earned fees into her trust account and commingled her funds with client funds. Respondent asserts that until the bar's inquiry, she was unaware that it is improper to commingle funds belonging to the attorney with funds belonging to client. Respondent further asserts that she has since ceased this practice.

7. Since 2004, Respondent has failed to maintain client subsidiary ledgers.

8. In 2013, Respondent's trust account provided overdraft protection for deficits in her operating account 64 times, for a total of over $61,500.00.

9. In 2014, Respondent's trust account provided overdraft protection for deficits in her operating account 74 times, for a total of over $85,000.00.

10. From January 2015 to February 2015, Respondent's trust account provided overdraft protection for deficits in her operating account four times for a total of over $2,200.00.

11. Because Respondent has commingled her funds with client funds, and because she has failed to maintain client subsidiary ledgers, Respondent cannot confirm that client funds were not withdrawn from her trust account to provide overdraft protection for deficits in her operating account.

12. In 2013 and 2014, Respondent has, at various times, kept client funds in her operating account and has written checks from her operating account to make payments using client funds, including, but not limited to refunding unearned fees to clients, making payments to the bankruptcy trustee on behalf of clients, and paying support arrearages on behalf of clients.

13. By commingling her funds with those of her clients, Respondent has violated Rule 1.15 (a) (3) of the Rules of Professional Conduct. [1]

14. By using her trust account for overdraft protection on her operating account since 2004 and by using the overdraft protection 142 times in 2013, 2014, and 2015, Respondent has violated Rule 1.15 (b) (5) and 8.4 (b) and (c) of the Rules of Professional Conduct.[2]

15. By failing to maintain client subsidiary ledgers, Respondent has violated Rule 1.15 (c) (2) of the Rules of Professional Conduct.[3]

16. By keeping client funds in her operating account instead of her trust account, Respondent has violated Rules 1.15 (a) (1) of the Rules of Professional Conduct.[4]

---

[1] Rule 1.15 was rewritten effective June 21, 2011. For commingling occurring prior to June 21, 2011, Respondent's conduct violated Rule 1.15 (a).
[2] For overdraft protection withdrawals occurring before June 21, 2011, Respondent's conduct violated Rule 1.15 (a) and Rule 8.4 (b) and (c).
[3] For failures to maintain subsidiary ledgers prior to June 21, 2011, Respondent's conduct violated Rule 1.15(e)(1)(iii).
[4] For failures to keep client funds in the trust account prior to June 21, 2011, Respondent violated Rule 1.15 (a).

2

17. By failing to handle client funds and maintain trust account records competently, Respondent has violated Rule 1.1 of the Rules of Professional Conduct.

## *Misconduct Related to Tamara Crews Bankruptcies*

18. Since 2004, Respondent has represented a substantial number of debtors in bankruptcy proceedings.

19. Respondent represented Tamara Sue Crews in a Chapter 13 bankruptcy filed in the United States Bankruptcy Court for the Eastern District of Virginia on February 29, 2012 and dismissed on September 18, 2014 (case no. 00-12-31264).

20. During the time that Respondent represented Ms. Crews in this bankruptcy, Respondent was a general creditor of Ms. Crews, who incurred several thousand dollars in fees for various services Respondent performed since 2005.

21. Respondent was listed as a creditor in the bankruptcy only to the extent of the attorney's fees and costs associated with this bankruptcy. Respondent was paid attorney's fees of $3,359.00 through the plan.

22. According to Respondent's own time records, on July 15, 2014, she and Ms. Crews had a discussion about "payments" Ms. Crews would receive from a "stock disbursement."

23. On August 6, 2014, the trustee filed an action to remedy default by Ms. Crews in performance under the plan.

24. On or about September 10, 2014, Ms. Crews received two checks payable to her totaling $50,074.58 from TIAA-CREF. Ms. Crews advised the bar's investigator that these checks represented an inheritance from a cousin.

25. Ms. Crews took the checks to Respondent, and on September 16, 2014, Respondent deposited the money into her trust account. Even though Ms. Crews was out of compliance with the payment plan, at no time did Respondent disclose to the bankruptcy trustee or the bankruptcy court the receipt of these funds. On September 18, 2014, Judge Phillips dismissed Ms. Crews' bankruptcy case for failure to make payments as required by the plan.

26. Respondent has provided the bar with a "disbursement sheet" indicating that Respondent immediately disbursed to herself $33,490.00 of the $50,074.58 as payment for outstanding fees for work Respondent had performed for Ms. Crews dating back to 2005. Respondent then deducted $679.00 for a bankruptcy filing fee and $1,875.00 for "future bankruptcy payments." According to the disbursement sheet, the remaining funds of $14,030.58 remained in the possession of Respondent.

27. On September 29, 2014, Respondent filed a new Chapter 13 petition on behalf of Ms. Crews in the U.S. Bankruptcy Court for the Eastern District of Virginia (case number 14-35243), which remains pending. In none of the filings made for either of Ms. Crews' bankruptcies

3

has Respondent disclosed the following: 1) that Ms. Crews received an inheritance of $50,074.58 on or about September 10, 2014; 2) that Respondent herself was a general creditor of Ms. Crews; 3) that shortly before filing the second petition on September 29, 2014, Respondent had accepted thousands of dollars from Ms. Crews to satisfy outstanding fees; 4) that Respondent continues to hold money for Ms. Crews; or 5) that Respondent has made several payments to Ms. Crews since filing the second bankruptcy.

28. Respondent has made payments to or on behalf of Ms. Crews from Respondent's operating account as follows:

| Amount | Date | Payment to and Memo line |
|---|---|---|
| $500.00 | 9/26/14 | Payable to Tamara Crews, "trust" |
| $600.00 | 9/26/14 | Payable to Patsy Wells, "pd. in full for Tamara Crews" |
| $1,100.00 | 10/21/14 | Payable to Tamara Crews, "estate" |
| $350.00 | 11/3/14 | Payable to Tamara Crews, no memo |
| $1,421.00 | 11/7/14 | Payable to Tamara Crews, "estate for [illegible]" |
| $440.00 | 11/18/14 | Payable to Tamara Crews, no memo |
| $250.00 | 11/24/14 | Payable to Tamara Crews, "estate" |
| $2,500.00 | 12/18/14 | Payable to Tamara Crews, "estate" |
| $525.00 | 12/18/14 | Payable to Tamara Crews, "estate" |
| $2,044.00 | 1/8/15 | Payable to Tamara Crews, "estate" |
| $400.00 | 1/15/15 | Payable to Mary E. Johnson, "Crews estate" |

29. By representing Ms. Crews in two bankruptcies when Respondent was a general creditor of Ms. Crews, Respondent violated Rules 1.7 (a) (2) and 8.4 (b) and (c) of the Rules of Professional Conduct.

30. By failing to disclose the following information to the bankruptcy trustee and/or the bankruptcy court  in one or both of bankruptcy cases: 1) that Ms. Crews received an inheritance of $50,074.58 on or about September 10, 2014; 2) that Respondent herself was a

4

general creditor of Ms. Crews; 3) that shortly before filing the second bankruptcy petition on September 29, 2014, Respondent accepted thousands of dollars from Ms. Crews to satisfy outstanding fees; 4) that Respondent continued to hold money for Ms. Crews; or 5) that Respondent has made several payments to Ms. Crews since filing the second bankruptcy, Respondent violated Rule 3.3 (a) (1) and (2), Rule 4.1 (a) and (b), and Rule 8.4 (b) and (c) of the Rules of Professional Conduct.

## II. <u>NATURE OF MISCONDUCT</u>

Such conduct by Respondent constitutes misconduct in violation of the following

provisions of the Rules of Professional Conduct:

## RULE 1.1    Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

## RULE 1.7    Conflict of Interest: General Rule.

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

(2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**RULE 1.15    Safekeeping Property**[5]

(a) <u>Depositing Funds</u>.

(1) All funds received or held by a lawyer or law firm on behalf of a client or a third party, or held by a lawyer as a fiduciary, other than reimbursement of advances for costs and expenses shall be deposited in one or more identifiable trust accounts or placed in a safe deposit box or other place of safekeeping as soon as practicable.

(3) No funds belonging to the lawyer or law firm shall be deposited or maintained therein except as follows:

(i) funds reasonably sufficient to pay service or other charges or fees imposed by the financial institution or to maintain a required minimum balance to avoid the imposition of service fees, provided the funds deposited are no more than necessary to do so; or

(ii) funds in which two or more persons (one of whom may be the lawyer) claim an interest shall be held in the trust account until the dispute is

---

[5] Rule 1.15 was rewritten effective June 21, 2011. Respondent's conduct prior to this date violated Rule 1.15 (a) and Rule 1.15 (e)(1) (iii) as then written, which provided:

(a)   All funds received or held by a lawyer or law firm on behalf of a client, other than reimbursement of advances for costs and expenses, shall be deposited in one or more identifiable escrow accounts maintained at a financial institution in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonable sufficient to pay service or other charges or fees imposed by the financial institution may be deposited therein; or
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, and the portion belonging to the lawyer or law firm must be withdrawn promptly after it is due unless the right of the lawyer or the law firm to receive it is disputed by the client, in which even the disputed portion shall not be withdrawn until the dispute is finally resolved.

(e)(1)(iii) Record-Keeping Requirements, Required Books and records.  As a minimum requirement every lawyer engaged in the private practice of law in Virginia, hereinafter called "lawyer," shall maintain or cause to be maintained, on a current basis, books and records which establish compliance with Rule 1.15 (a) and(c).  Whether a lawyer or law firm maintains computerized records or a manual accounting system, such system must produce the records and information required by this Rule.

(1) In the case of funds held in an escrow account subject to this Rule, the required books and records include:
(iii) subsidiary ledger.  A subsidiary ledger containing a separate account for each client and for every other person or entity from whom money has been received in escrow shall be maintained. The ledger account shall by separate columns or otherwise clearly identify escrow funds disbursed, and escrow balance on hand. The ledger account for a client or a separate subsidiary ledger account for a client shall clearly indicate all fees paid from trust accounts;

resolved and there is an accounting and severance of their interests. Any portion finally determined to belong to the lawyer or law firm shall be withdrawn promptly from the trust account.

(b) <u>Specific Duties.</u>  A lawyer shall:

(5) not disburse funds or use property of a client or third party without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

(c) <u>Record-Keeping Requirements.</u>  A lawyer shall, at a minimum, maintain the following books and records demonstrating compliance with this Rule:

(2) A subsidiary ledger containing a separate entry for each client, other person, or entity from whom money has been received in trust.

The ledger should clearly identify:

(i) the client or matter, including the date of the transaction and the payor or payee and the means or methods by which trust funds were received, disbursed or transferred; and

(ii) any unexpended balance.

**RULE 3.3      Candor Toward The Tribunal**

(a)      A lawyer shall not knowingly:

(1)  make a false statement of fact or law to a tribunal;

(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, subject to Rule 1.6;

**RULE 4.1      Truthfulness In Statements To Others**

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of fact or law; or

(b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.

7

**RULE 8.4     Misconduct**

It is professional misconduct for a lawyer to:

(b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

## III. CERTIFICATION

Accordingly, it is the decision of the Subcommittee to certify the above matters to the

Virginia State Bar Disciplinary Board.

THIRD DISTRICT—SECTION I
SUBCOMMITTEE OF
THE VIRGINIA STATE BAR

By _____
Reiss F. Wilks
Subcommittee Chair

## CERTIFICATE OF SERVICE

I certify that on _____, 2015, I mailed by certified mail a true and correct copy of the foregoing Subcommittee Determination (Certification) to Nnika Evangeline White, Esquire, Respondent, at Suite 800, 9101 Midlothian Turnpike, Richmond, VA 23235, Respondent's last address of record with the Virginia State Bar, and by first class mail, postage prepaid, to Charlotte Peoples Hodges, counsel for Respondent, at B.I.G. Legal Services, PLLC, P.O. Box 4302, Midlothian, VA 23112.

_____
Kathryn R. Montgomery
Deputy Bar Counsel

8